AMANDA C. PUGSLEY, Respondent, *against* EMMA A.
SUMNER *et al.*, Appellants.

(Decided February 6th, 1888.)

In a suit to set aside a conveyance as procured by fraud, defendant set
up a general release by plaintiff. It appeared that shortly after
plaintiff discovered the alleged fraud, she employed one G. for the
purpose of getting her deed back or getting a settlement with defend-
ant. Plaintiff had become acquainted with G. through defendant, for
whom he acted as notary public in taking the acknowledgment of the
deed in question. After negotiations extending over several months,
G. procured a settlement, and plaintiff executed the release in question.
This action was brought four years thereafter. There was no evidence
to show that the release was procured by fraud. *Held,* that it was a
good defense.

APPEALS from a judgment of this court entered upon
the decision on a trial by the court without a jury.

The facts are stated in the opinion.

*Eugene F. Daly,* for Knapp, appellant.

*Matthew Daly,* for Sumners, appellants.

*E. M. Tyng,* for respondent.

J. F. DALY, J. — This action was brought to set aside a
conveyance from the plaintiff to Mrs. Sumner of an undi-
vided half-interest in the house and lot No. 351 East 85th
Street, made December 11th, 1879, which, it is alleged, was
obtained by the fraud of the defendants Sumner. It was
shown that the defendant Perrin H. Sumner, the husband
of the defendant Emma A. Sumner, the grantee in such
conveyance, originally induced the plaintiff to exchange
with one Albion L. Mellen a farm owned by her in
Dutchess County for said undivided half-interest (which
was thereupon conveyed to her by Sarah S. Mellen, his

wife), and for certain other doubtful considerations. Shortly afterwards, Perrin H. Sumner induced the plaintiff to make another exchange of said undivided half-interest with the same Albion L. Mellen, for certain real estate owned by the latter in Monmouth County, New Jersey; and upon such exchange the plaintiff executed the conveyance of said half-interest which she now seeks to set aside, and which Sumner procured her to make to his own wife instead of to Mellen, Mellen being in all these transactions a mere mask for Sumner. This last exchange was procured upon the fraudulent representation made to plaintiff by Sumner that the New Jersey property was worth $8,000, and that two purchasers stood ready to buy it at that figure, and that she would realize cash for her half-interest in the 85th Street house by making the exchange. Of course the purchasers were not forthcoming when Sumner obtained the deed from plaintiff; and, upon discovering the trick, she immediately took steps to get the deed back, or get a settlement in some way. To this end she employed one Gross, who was a notary public, and, I presume from the testimony, a lawyer. Gross had been introduced to her by Sumner, and had taken her acknowledgment of the deed of December 11th, and it had been left with him in escrow pending the negotiations for exchange.

Gross negotiated with the Sumners for a settlement, which was effected about two months afterwards, and a general release executed to the Sumners by the plaintiff in consideration of certain securities transferred to her, and which are enumerated in a writing executed by her with the release. This release is set up in the answer of the defendants Sumner as a defense to this action. The court at Special Term found that it was procured by fraud and collusion, and, being a part of the fraudulent scheme hereinbefore mentioned, was void and of no effect as a bar to the cause of action set forth in the complaint.

There is not a particle of evidence in the case to sustain this finding against the release. The testimony of the plaintiff as to the settlement is as follows:

" On Monday he (her husband) went to see if the deed of the 85th Street property was recorded, and told me it was. We then went to Gross, and told him we wanted the deed back, and wanted him to act for us as our attorney, and see Sumner, and get it back, or get a settlement of the matter in some way. Gross told us that he would act for us, and see Sumner. He afterwards told us that he had seen Sumner, and he thought we had better settle with Sumner, rather than have a lawsuit. That it would take two or three years to fight a lawsuit through, and Sumner might sell and convey the property, and we might never get anything.

" Q. And did Mr. Gross negotiate for you with Mr. Sumner for the settlement?

" A. He did entirely. I did not see Sumner afterwards.

" Q. When did Mr. Gross report to you the fact that a settlement had been arrived at — how long?

" A. We were three months getting at it. I had a great many interviews with Mr. Gross. First one thing was offered and then another. Finally, after three months, we agreed upon a settlement.

" Q. In pursuance then of this settlement negotiated by Mr. Gross for you did you sign the two papers now shown you?

" A. That is my writing." (The release and other writing above mentioned were marked in evidence. The plaintiff's counsel produced the bond and mortgage mentioned in the last-named writing, and they were marked as exhibits.) " Gross said he thought we had better settle. We did so and executed the releases in evidence." She also admitted the receipt of some money on account of the security received on that settlement. No part of the security has been returned. Four years after the settlement this action was commenced.

The fact that Gross had previously acted with the Sumners was no ground for inferring bad faith or collusion on his part in this particular matter. The plaintiff and her husband knew who he was, and even (according to the

husband's testimony) that he had wrongfully delivered to Sumner the deed left with him in escrow; yet they employed him to act for them and to bring Sumner to terms, and there is no evidence that he did not so act in good faith.   The terms of the settlement were fully understood and negotiated, and no fraud whatever was practised in order to induce plaintiff to agree to them.   Under this state of the proof I think that the judgment should have been for defendants.   The plaintiff received as consideration for the release what she evidently deemed sufficient to indemnify her, and made no complaint for four years, when she " first took counsel and paid a fee."   She ought to have consulted counsel before the release was given.

It is argued by the respondent that the *onus* was on the defendants to show that the release was fair and the consideration adequate, and that it does not lie with them to claim that the plaintiff's proof is insufficient.   I presume that this contention is based upon the same ground relied upon for the suggestion contained elsewhere in his brief, that the *onus* of proving the integrity of the prior transactions was on Perrin H. Sumner, because he was the trusted agent of the plaintiff in making the exchanges of property. This relation existed until he was attacked by plaintiff and required to restore the property he had induced her to convey.   In the negotiations for a settlement of his differences with plaintiff he was defending himself, and owed her no obligation as an agent.   The burden is upon her to prove the settlement fraudulent.   This she has not done.

The judgment cannot be sustained on the ground that the escrow was violated, and therefore no title passed because there was no delivery.   The release and settlement covers that claim as well as the fraud upon which the judgment is based.   The delivery of the deed was ratified and confirmed by the settlement.

As the judgment must be reversed, the points of the appellant, Knapp, the mortgagee, need not be considered ; the finding against him necessarily falls with the judgment against the Sumners, his mortgagors.

Judgment should be reversed and a new trial ordered, with costs to abide event.

LARREMORE, Ch. J., and VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.